**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SORRENTO THERAPEUTICS, INC., *et al.*,[1] | Case No. 23-90085 (DRJ) |
| Debtors. | (Jointly Administered) |
| OFFICIAL COMMITTEE OF EQUITY SECURITIES HOLDERS, | |
| Plaintiff. | |
| | Adversary Proceeding No. _____ |
| v. | **COMPLAINT** |
| BANK OF AMERICA SECURITIES, INC., MERRILL, LYNCH, PIERCE, FENNER & SMITH INCORPORATED, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO., LLC, PERSHING LLC, NATIONAL FINANCIAL SERVICES LLC, STATE STREET BANK AND TRUST COMPANY, AND UBS SECURITIES LLC, | |
| Defendants. | |

**<u>COMPLAINT</u>**

Plaintiff, the Official Committee of Equity Securities Holders (the "<u>Equity Committee</u>" or

"<u>Plaintiff</u>") of the debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-

captioned Chapter 11 cases (the "<u>Chapter 11 Cases</u>"),[2] files this complaint, with the consent of the

---

[1]   The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are:  Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956).  The Debtors' service address is:  4955 Directors Place, San Diego, CA 92121.

[2]   On February 13, 2023 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  Unless otherwise noted herein, references to "Dkt. No." shall refer to the docket entries in the Debtors' lead bankruptcy case.

Debtors, for declaratory and injunctive relief (the "Complaint") against defendants Bank of America Securities, Inc. ("BofA Securities"), Merrill, Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), J.P. Morgan Securities LLC ("JP Morgan Securities"), Morgan Stanley & Co., LLC ("Morgan Stanley"), National Financial Services LLC ("National"), Pershing LLC ("Pershing"), State Street Bank and Trust Company ("State Street"), and UBS Securities LLC ("UBS Securities" and, collectively, the "Defendants")[3] and respectfully shows the Court as follows:

## NATURE OF THE ACTION

1. This action concerns the pervasive and abusive "naked" short-selling – *i.e.*, taking a short position without correlating shares being located and borrowed by the short-seller – of the common stock of Scilex Holding Company ("Scilex") in violation of SEC regulations and established industry practices. The Debtors, which own a majority of the Scilex stock, are victims of these illegal practices. This action, brought by the estate fiduciary appointed to represent the Debtors' shareholders with the Debtors' approval, seeks relief against the defendant brokerage firms that have allowed illegal naked shorting of Scilex stock.

2. The Debtors own a controlling interest in Scilex, which trades on the Nasdaq stock exchange. There have been a series of irregularities involving the Scilex stock since the Petition Date. As set forth in their Rule 2004 Motion (as defined below), the Debtors observed irregularities in the reported ownership of the Scilex stock in connection with the annual meeting of Scilex shareholders: the reported beneficial ownership did not correlate to the reports issued by Scilex's proxy agent, Broadridge.

---

[3]   Plaintiff respectfully reserves the right to join additional defendants to this action.

3.      Accordingly, the Equity Committee filed a motion, which the Court granted, seeking to compel the brokerage firms trading in Scilex stock to credit all Dividended Scilex Stock (as defined below) to their customers' accounts and file a report with the Court detailing as to each customer account, on an anonymous basis, the number of shares of Dividended Scilex Stock credited and the quoted price of such stock on a mark-to-market basis.  Upon the filing of the Debtors' and Equity Committee's motions, the trading prices of Scilex stock have spiked upwards without any ostensible explanation other than covering of short positions.

4.      The certifications filed by the Defendants with this Court prove that there has been illegal naked shorting of the Scilex stock.  To obtain a legal short position, the short-seller must "borrow" or "locate" freely tradeable stock in the subject stock before closing the short sale.  However, *the reports provided by Defendants indicate that the short interest in Scilex stock totals millions of shares more than the entire public float of approximately 3 million Scilex shares*.  The ineluctable conclusion is that these short positions resulted from illegal short-selling.

5.      For instance, defendant Morgan Stanley maintains a handful of accounts that alone hold over 2.5 million short positions in Scilex stock.  As another example, *just two accounts* at defendant BofA Securities hold short positions of over 1 million Scilex shares each.  And perhaps most staggering, only *one account* at defendant Merrill Lynch holds a short position of over two million Scilex shares.

6.      The Debtors' controlling interest in the Scilex stock is among their most valuable assets.  But naked short-selling is causing artificial selling pressure on the Scilex stock, which has depressed the trading price of the security and increased the stock's volatility on the open market.  The depressed price and increased volatility of the stock have in turn dampened the Debtors' ability to sell the Scilex stock or obtain financing based on the value of the Scilex stock.

7.     The Court's intervention is therefore urgently needed to address this continuing threat to the overall value of the Debtors' estates and the eventual success of the Chapter 11 Cases.  By this Complaint, to avoid irreparable harm to the Debtors' bankruptcy estates, the Equity Committee seeks: (i) a declaratory judgment that Defendants' allowance and facilitation of naked short-selling of Scilex stock constitute willful violations of the automatic stay under Section 362(a)(3) of the Bankruptcy Code, and (ii) a permanent injunction pursuant to Sections 105(a), 362, and 362(k) of the Bankruptcy Code:

a.   Ordering Defendants to close out all uncovered, naked short positions on all restricted Dividended Scilex Stock;

b.   Ordering Defendants to close out all uncovered, naked short positions on all Scilex Common Stock;

c.   Rescinding any pending naked short-sales of Dividended Scilex Stock and Scilex Common Stock;

d.   Enjoining all short-sales of Dividended Scilex Stock from the date the Court enters an order granting the relief requested herein through the close of the Chapter 11 Cases;

e.   Requiring Defendants to pay a penalty (the Debtors and the Equity Committee propose  $1.00 a day per share of Dividended Scilex Stock and unrestricted Scilex Common Stock, which Defendants individually hold as custodian for their beneficial owners) in order to ensure compliance with any order issued hereunder, whose positions are not closed out within five (5) business days of the date of this Order, to be deposited with the Registry of the Court for the benefit of the Debtors' estates; and

f.   Ordering Defendants to provide an accounting of, and disgorge all profits received from, the naked-short selling of Dividended Scilex Stock and Scilex Common Stock, including all interest charged to short-sellers, by depositing such gains into the Registry of the Court within five (5) business days of the entry of this Order for the benefit of the Debtors' estates.

g.   Ordering such other and further relief as the Court may deem just, equitable, and proper.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 362, and 362(k) and Rule 7065 of the Federal Rules of Bankruptcy Procedure.  The Equity Committee consents to entry of final orders or judgment by this Court.

## THE PARTIES

10.    Plaintiff is the Official Committee of Equity Securities Holders in the bankruptcy case captioned *In re Sorrento Therapeutics, Inc. et al.*, Case No. 23-90085 (DRJ) (Bankr. S.D. Tex.).  The Equity Committee was formed on April 10, 2023.  *See Notice of Appointment of Official Committee of Equity Security Holders* [Dkt. No. 391].  The Equity Committee is bringing this action at the request of the Debtors and on behalf of the Debtors' estates.

11.    Defendant BofA Securities is a Delaware corporation with a principal place of business in New York, New York.  BofA Securities is registered with the Securities and Exchange Commission (the "SEC") as a broker-dealer and an investment adviser.

12.     Defendant Merrill Lynch is a Delaware corporation with a principal place of business in New York, New York.  Merrill Lynch is registered with the SEC as a broker-dealer and an investment adviser.

13.     Defendant JP Morgan Securities is a Delaware limited liability company with a principal place of business located in New York, New York.  JP Morgan Securities is registered with the SEC as a broker-dealer and an investment adviser.

14.     Defendant Morgan Stanley is a Delaware limited liability company with a principal place of business located in New York, New York.  Morgan Stanley is registered with the SEC as a broker-dealer.

15.     Defendant National is a Delaware limited liability company with a principal place of business in Boston, Massachusetts.  National is registered with the SEC as a broker-dealer.

16.     Defendant UBS Securities is a Delaware limited liability company with a principal place of business in New York, New York.  UBS Securities is registered with the SEC as a broker-dealer.

17.     Defendant Pershing is a Delaware limited liability company with a principal place of business located in Jersey City, New Jersey.  Pershing is registered with the SEC as a broker-dealer.

18.     Defendant State Street is a Massachusetts limited liability trust company with a principal place of business in Boston, Massachusetts.

## FACTUAL BACKGROUND

**I.**     **The Scilex Dividend.**

18.    One of the Debtors' most significant assets is Debtor Sorrento Therapeutics, Inc.'s ("Sorrento") 52% equity interest in Scilex Holding Company ("Scilex"), a publicly traded company that resulted from a spinoff and dividend to Sorrento shareholders.

19.    As of the Petition Date, Sorrento owned (i) approximately 59 million shares of Scilex common stock (the "Scilex Common Stock") and (ii) approximately 29 million shares of Scilex's Series A Preferred Stock (the "Scilex Preferred Stock"). These securities collectively had a market value of approximately $850 million on the Petition Date.

20.    Sorrento hold a majority of the aggregate voting power of Scilex stock.

21.    Immediately following a merger involving Scilex in November 2022, Sorrento held a 96.2% interest in shares of Scilex Common Stock subject to a 180-day lockup agreement.

22.    Pursuant to the terms of that certain *Amended and Restated Registration Rights Agreement of Scilex, dated November 10, 2022*, Sorrento was restricted from transferring its shares of Scilex Common Stock until May 11, 2023 (the "Restriction Period"), subject to certain exceptions (including dividends).

23.    On December 30, 2022, Sorrento announced a dividend to its shareholders of 76 million shares of Scilex Common Stock (the "Sorrento Dividend" and the shares so distributed, the "Dividended Scilex Stock"). The Sorrento Dividend occurred on January 19, 2023, and reduced Sorrento's ownership interest in Scilex Common Stock from 96.2% to 42.5%. The Debtors continue to hold Scilex Preferred Stock, which provides the Debtors with a majority ownership and voting interest in Scilex.

24.     The Dividended Scilex Stock was primarily received by "record owners," or brokers, dealers, banks and other nominees acting as agents for shareholders who are the true "beneficial owners" of the stock.  These agents hold, in the aggregate, approximately 89.5% of the shares of Dividended Scilex Stock that were supposed to be ultimately transferred to the brokerage accounts of Sorrento shareholders.

25.     Sorrento shareholders who received the Dividended Scilex Stock were similarly restricted from transferring it until after the May 11, 2023 Restriction Period.  The Restriction Period, however, was subsequently extended by Court order during the Chapter 11 Cases to September 1, 2023.  *See* [Dkt. No. 524].  Thus, at all relevant times, the Dividended Scilex Stock is not freely tradeable.

**II.     The Discrepancy in Reported Shares of Scilex Stock.**

26.     On May 4, 2023, Scilex held its annual shareholder meeting.  The record date for shareholders entitled to receive notice of and vote at the annual shareholder meeting was March 6, 2023, and Scilex filed proxy materials with the SEC in advance as required by federal securities laws.

27.     In a highly unusual development, the proxy materials mandated to be delivered to beneficial owners of more than 44 million shares of Scilex Common Stock were never, in fact, delivered.

28.     The Debtors suspected that the brokers, dealers, banks and other nominees that act as agents for Sorrento shareholders failed to report their total shareholdings to Broadridge Financial Solutions, Inc. ("Broadridge"), the entity designated to collect, verify, and tabulate shareholder votes for Scilex's annual meetings.

29.     Soon thereafter, the Debtors obtained a report produced by Broadridge confirming what they suspected:  a significant discrepancy between the number of shares held at top brokerage firms and the number of shares actually reported to Broadridge, the discrepancy being larger than the 3 million public share float.  This indicated, but did not prove, that there was widespread illegal naked short-selling of the Scilex Common Stock.

30.     Accordingly, on March 31, 2023, the Debtors filed a motion (the "Rule 2004 Motion") that sought, *inter alia*, an order compelling certain brokerages (the "Rule 2004 Firms") to provide written responses to various requests (collectively, the "Information Requests") on or before April 5, 2023.  The Information Requests sought information regarding which Rule 2004 Firms had failed to report, or had underreported, the ownership of Scilex Common Stock so that the Debtors could seek to remedy such failure and its effect on Scilex's stock value.

31.     The Debtors believed that a substantial number of minority shareholders of Scilex may have been actually or functionally disenfranchised by the Rule 2004 Firms' failure to report all holdings of Scilex Common Stock and to deliver proxy materials in compliance with federal securities laws.  On April 11, 2023, the Court entered an order approving the Rule 2004 Motion.

32.     The Debtors received surprisingly few responses to their Information Requests from the Rule 2004 Firms and, based on information provided by the Debtors, the Equity Committee understands that nearly all responses were inadequate, incomplete, and/or did not resolve the uncertainties surrounding the reporting of Scilex Common Stock.

33.     In response to these events, the Debtors and the Equity Committee agreed that the Equity Committee should investigate the foregoing reporting deficiencies and take additional measures to rectify what appeared to be abusive naked short-selling practices that would be artificially depressing the value of the Scilex Common Stock and the Debtors' estates.

### III.     The Equity Committee's Motion to Compel
###          Compliance from the Brokerage Firms.

34.     On May 11, 2023, the Equity Committee, with the support of the Debtors, filed the

*Official Committee of Equity Securities Holders' Emergency Motion Seeking to Compel Certain*

*Brokerage Firms' Compliance with Various Regulatory Requirements* [Dkt. No. 594] (the

"Motion to Compel") seeking to compel select brokerage firms (the "Brokerage Firms") to ensure

that all Dividended Scilex Stock had been properly recorded and segregated in their customers'

accounts in compliance with applicable regulatory requirements.

35.     On May 12, 2023, the Court entered the *Order Compelling Brokerage Firms'*

*Compliance with Various Regulatory Requirements* [Dkt. No. 609, and, as amended, Dkt. No. 681]

(the "Order").

36.     The Order partially granted the Motion to Compel and, *inter alia*, directed the

Brokerage Firms to "credit all Dividended Scilex Stock to their customers' accounts"  and to "file

a report with the Court detailing as to each customer account, on an anonymous basis, the number

of shares of Dividended Scilex stock credited and quoted price of such stock on a mark-to-market

basis" by no later than May 23, 2023.[4]  *See* Order ¶ 2(a).

37.     The Order further provides that the Equity Committee is entitled to "seek additional

relief, whether by contested matter or adversary proceeding, as appropriate after reviewing the

responses required under Paragraph 2.a." of the Order.  *See* Order ¶ 8.

---

[4]     The Equity Committee received several requests from various Brokerage Firms for extensions of the deadline to
comply with the Order Compelling Compliance.  The Equity Committee generally granted such extension
requests, the latest of which expired on June 7, 2023.

## IV.    <u>Brokerage Firm Responses to Order Reveal Evidence of "Naked" Short-Selling</u>

38.    "Naked" short-selling occurs when a seller of securities does not borrow or arrange to borrow such securities in time in time for delivery to the Clearing Corporation (the "<u>Clearinghouse</u>") by the trade date plus two days ("<u>T+2</u>").  When one party does not deliver shares to the Clearinghouse within T+2 settlement days, then a settlement failure may occur.  This "fail-to-deliver" is documented as a delivery obligation in the Clearinghouse account of the broker–dealer that executed the trade.  In other words, failure to deliver securities through naked short-selling allows traders to sell securities that they do not actually possess.

39.    According to the SEC, "'Naked' short selling…can have negative effects on the market.  Indeed, fraudsters may use "naked" short selling as a tool to manipulate the market."[5] Furthermore, research has shown that shown that securities with high and/or persistent fails-to-deliver tend to experience depressed stock prices in the form of negative abnormal returns.

40.    Regulation SHO was specifically enacted by the SEC to stop naked short-selling practices.  As the SEC has explained in published guidance for Regulation SHO:

> Rule 200(g) requires that a broker-dealer to mark all sell orders of any equity security as "long," "short" or "short exempt." A sell order may only be marked "long" if the seller is "deemed to own" the security being sold and either: (i) the security to be delivered is in the physical possession or control of the broker or dealer; or (ii) it is reasonably expected that the security will be in the physical possession or control of the broker or dealer no later than the settlement of the transaction. The "short exempt" marking requirement applies only with respect to the short sale price test restriction.

> Rule 203(b)(1) generally prohibits a broker-dealer from accepting a short sale order in any equity security from another person, or effecting a short sale order in an equity security for the broker-dealer's own account, unless the broker-dealer has: borrowed the security, entered into a bona-fide arrangement to borrow the security, or reasonable grounds to believe that the security can be borrowed so that it can be delivered on the date delivery is due.[6]

---

[5]   *Key Points About Regulation SHO* (<u>https://www.sec.gov/investor/pubs/regsho.htm</u>).

[6]   *SEC Division of Market Regulation: Responses to Frequently Asked Questions Concerning Regulation SHO* (<u>https://www.sec.gov/divisions/marketreg/mrfaqregsho1204.htm</u>).

Rule 204 . . . address[es] concerns that fails may create a misleading impression of the market for securities. Large and persistent fails to deliver may have a negative effect on shareholders, potentially depriving them of the benefits of ownership, such as voting and lending. Thus, by facilitating the prompt receipt of shares, Rule 204 . . . enable[s] investors to receive the benefits associated with share ownership.[7]

41.     The Equity Committee has carefully reviewed the responses received from the Brokerage Firms to date, including the responses submitted by the Defendants.  The responses submitted by the Defendants confirm the Debtors' and the Equity Committee's concerns that many of the Brokerage Firms are not complying with Regulation SHO, and that abusive "naked" shorting of the restricted Dividended Scilex Stock is occurring in the market.  Indeed, the responses submitted by the Defendants demonstrate continued selling pressure on the stock and show the aggregate short interest actually exceeds the current float in the market.  This indicates that here is rampant (i) naked short-selling of the Dividended Scilex Stock shares, and/or (ii) naked short-selling of the unrestricted Scilex Common Stock.

42.     Based on the responses from the Defendants, it appears that there are over 10 million Scilex shares being shorted.

43.     BofA Securities' response to the Order, a copy of which is attached hereto as Exhibit A, reports holdings in excess of 3 million total shares that are being shorted.

44.     Defendant Merrill Lynch's response to the Order, a copy of which is attached hereto as Exhibit B, reports holdings in excess of 2.2 million total shares that are being shorted.

45.     JP Morgan Securities' response to the Order, a copy of which is attached hereto as Exhibit C, reports holdings in excess of 1.8 million total shares that are being shorted.

---

[7]     *Amendments to Regulation SHO, Securities and Exchange Commission,* Release No. 34-60388; File No. S7-30-08, Effective July 31, 2009. (https://www.sec.gov/rules/final/2009/34-60388.pdf)

46.     Defendant Morgan Stanley's response to the Order, a copy of which is attached hereto as <u>Exhibit D</u>, reports holdings in excess of 2.5 million total shares that are being shorted.

47.     Defendant National's response to the Order, a copy of which is attached hereto as <u>Exhibit E</u>, reports holdings in excess of 600,000 total shares that are being shorted.

48.     Defendant UBS Securities' response to the Order, a copy of which is attached hereto as <u>Exhibit F</u>, reports holdings in excess of 160,000 total shares that are being shorted.

49.     Defendant Pershing's response to the Order, a copy of which is attached hereto as <u>Exhibit G</u>, reports holdings in excess of 5,000 total shares that are being shorted.

50.     Defendant State Street's response to the Order, a copy of which is attached hereto as <u>Exhibit H</u>, reports that certain Dividended Scilex Shares have not been credited to accounts of shareholders who had Scilex Common Stock on loan at the time the dividend was issued.  Rather, the Dividended Scilex Stock was automatically added to the existing loans of Scilex stock. Defendant State Street's admission that it is loaning Dividended Scilex Stock shares indicates that it is using such shares for shorting, in violation of Regulation SHO.

51.     Defendants have a strong monetary inducement to allow illegal naked short-selling. As of the date hereof, some of the Defendants have charged short-selling customers as much as 300% interest per annum for borrowing any shares for short-selling.  This is apparently the case even if the shares are not actually borrowed.

**V.      The Debtors, and by Extension Plaintiff, Have Suffered Significant Harm as a Result of the "Naked" Short-Selling.**

52.     The Debtors have suffered significant harm as a result of the naked short-selling of Dividended Scilex Stock.  As explained herein, Sorrento's Scilex stock holdings constitute one of the Debtors' most significant assets.

53.     After the filings of the Rule 2004 Motion and the Motion to Compel, both of which aimed to uncover any potential short-selling of the Dividended Scilex Stock, the price of the Scilex Common Stock underwent drastic and uncharacteristic fluctuations.

54.     The following chart exemplifies the volatility of Scilex's stock price during the period from March, 29, 2023, two business days prior to the filing of the Rule 2004 Motion through April 13, 2023, two business days after the order approving the Rule 2004 Motion was entered:



55.     The following chart exemplifies the volatility of Scilex's stock price during the period from May 9, 2023, two business days prior to the filing of the Motion to Compel, through May 16, 2023, two business days after the Order was entered:



56.     There was no reported news during these two timeframes that would otherwise be expected to drive such volatility in the Scilex stock price.  Instead, it appears that the filing of these pleadings caused some short sellers to cover their positions, which caused the share prices to spike upwards.

57.     But this did not deter all of the short-sellers.  It is clear from the short positions reported by Defendants in their responses to the Court's Order, as well as the complete lack of response from many other Brokerage Firms, that the *in terrorem* effect of the Debtors' Rule 2004 and the Equity Committee's Motion to Compel has not succeeded in correcting the pervasive naked short-selling of the Dividended Scilex Stock and the unrestricted Scilex Common Stock.

58.     The depression of the Scilex Common Stock price effectively artificially devalues one of the Debtors' most valuable assets, which in turn hinders the Debtors' ability to obtain a value-maximizing stock price as the Debtors seek to monetize their shares of Scilex Common Stock and/or Scilex Preferred Stock through a sale during the bankruptcy or through a plan of reorganization.

59.     Accordingly, by the filing of this Complaint, the Equity Committee seeks to quash once and for all the illegal naked short-selling of Scilex Common Stock and Dividended Scilex Stock.

## CLAIMS FOR RELIEF

### Count I
### (*Claim for Declaratory Judgment*)

60.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

61.     Section 362(a) of the Bankruptcy Code provides, in relevant part, that the filing of a petition under chapter 11 of the Bankruptcy Code "operates as a stay, applicable to all entities, of . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"  11 U.S.C. § 362(a)(3).

62.     At the time the Debtors commenced the Chapter 11 Cases, the Debtors' ownership interest in Scilex constituted a substantial asset of their bankruptcy estates.  The actions of Defendants, including the allowance and facilitation of illegal naked short-selling of Scilex stock, would be, therefore, subject to and in violation of the automatic stay.

63.     Accordingly, pursuant to Bankruptcy Rule 7001, the Equity Committee requests that this Court enter a declaratory judgment that Defendants' allowance and facilitation of illegal naked short-selling of Scilex stock constitutes violations of the automatic stay under Section 362(a)(3) of the Bankruptcy Code.

## COUNT II

### (*Claim for Injunctive Relief*)

64.      Plaintiff repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

16

65.     Section 105(a) of the Bankruptcy Code authorizes the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

66.     Section 362(a) of the Bankruptcy Code provides, in relevant part, that the filing of a petition under chapter 11 of the Bankruptcy Code "operates as a stay, applicable to all entities, of . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3).

67.     The relief requested herein is necessary to protect Debtors' ability to efficiently and effectively administer the above-captioned cases and to preserve the property of its estates.

68.     In the absence of entry of the requested injunctive relief, the Debtors and its estates will be imminently and irreparably harmed. Absent this Court's grant and entry of injunctive relief, the Debtors' most valuable asset will continue to lose value and suffer from unpredictable market swings.

69.     The balance of harms is in favor of the Debtors.  Absent the relief requested, Debtors will be greatly harmed.  In contrast, the Defendants will not suffer any irreparable harm.

70.     The losses in value would irreparably harm and effectively derail the Debtors' reorganization efforts to the detriment of all concerned.  Absent the Court's intervention, continued naked short-selling would very likely result in the Debtors' inability to sufficiently extend its financial runway and efficiently exit from Chapter 11.

71.     The Debtors have no adequate remedy at law if the Defendants, their officers, agents servants employees, attorneys, and those persons in active concert or participation with them, are not enjoined.

72.     The public interest supports issuance of injunctive relief because, in addition to the above, it will (i) provide the Debtors with a chance to effectively and successfully reorganize and (ii) enable the Debtors' to flexibly seek restructuring alternatives that will allow its businesses to continue operations for the benefits of creditors, customers, and the public at large.

73.     Pursuant to 11 U.S.C. §§ 105(a) and 362(k), the Debtors are entitled to recover punitive damages from the Defendants as a result of its violations of the automatic stay.

## **PRAYER FOR RELIEF**

74.     The Equity Committee respectfully requests (i) the Court enter a declaratory judgment that Defendants' allowance and facilitation of naked short-selling of Scilex stock constitute violations of the automatic stay under Section 362(a)(3) of the Bankruptcy Code; and (ii) a permanent injunction pursuant to Sections 105(a), 362(a)(3), and 362(k) of the Bankruptcy Code be entered:

   a.   Ordering Defendants to close out all uncovered, naked short positions on all restricted Dividended Scilex Stock;

   b.   Ordering Defendants to close out all uncovered, naked short positions on all Scilex Common Stock;

   c.   Rescinding any pending naked short-sales of Dividended Scilex Stock and Scilex Common Stock;

   d.   Enjoining all short-sales of Dividended Scilex Stock from the date the Court enters an order granting the relief requested herein through the close of the Chapter 11 Cases;

   e.   Requiring Defendants to pay a penalty (the Debtors and the Equity Committee propose  $1.00 a day per share of Dividended Scilex Stock and unrestricted Scilex

Common Stock, which Defendants individually hold as custodian for their beneficial owners) in order to ensure compliance with any order issued hereunder, whose positions are not closed out within five (5) business days of the date of this Order, to be deposited with the Registry of the Court for the benefit of the Debtors' estates; and

f.    Ordering Defendants to provide an accounting of, and disgorge all profits received from, the naked-short selling of Dividended Scilex Stock and Scilex Common Stock, including all interest charged to short-sellers, by depositing such gains into the Registry of the Court within five (5) business days of the entry of this Order for the benefit of the Debtors' estates.

g.    Ordering such other and further relief as the Court may deem just, equitable, and proper.

## **CONCLUSION**

WHEREFORE, Plaintiff the Official Committee of Equity Securities Holders respectfully requests that this Court issue the requested order for the reasons stated herein and such other further relief to which the Plaintiff may be entitled either in law or in equity.

*[Signature Page Follows]*

Dated: June 12, 2023

Respectfully Submitted,

**GLENN AGRE BERGMAN & FUENTES LLP**
By: */s/ Andrew K. Glenn*
Andrew K. Glenn (*pro hac vice*)
Kurt A. Mayr (*pro hac vice*)
Shai Schmidt (*pro hac vice*)
Richard C. Ramirez (*pro hac vice*)
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 970-1601
Email: aglenn@glennagre.com
kmayr@glennagre.com
sschmidt@glennagre.com
rramirez@glennagre.com

**<u>Certificate of Accuracy</u>**

     I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

By: <em><u>/s/ Andrew K. Glenn</u></em>

**<u>Certificate of Service</u>**

     I certify that, on June 12, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

By: <em><u>/s/ Andrew K. Glenn</u></em>